IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL CASE NO. 17-00113 |
| ) | |
| Plaintiff, ) | ORDER DENYING PLAINTIFF UNITED |
| ) | STATES OF AMERICA'S MOTION TO |
| vs. ) | REVISE ORDER GRANTING IN PART |
| ) | DEFENDANTS' MOTION FOR |
| GOVERNMENT OF GUAM; ) | JUDGMENT ON THE PLEADINGS |
| CHAMORRO LAND TRUST ) | |
| COMMISSION; and ) | |
| ADMINISTRATIVE DIRECTOR OF ) | |
| THE CHAMORRO LAND TRUST ) | |
| COMMISSION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER DENYING PLAINTIFF UNITED STATES OF AMERICA'S
MOTION TO REVISE ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.     INTRODUCTION.**

Plaintiff United States of America seeks reconsideration of this court's ruling that it may not pursue money damages from Guam pursuant to 42 U.S.C. § 3614 of the Fair Housing Act. The reconsideration motion is denied.

**II.    STANDARD OF REVIEW.**

Unless a ruling has been certified as final under Rule 54(b) of the Federal Rules of Civil Procedure,

> any order or other decision, however
> designated, that adjudicates fewer than all
> the claims or the rights and liabilities of
> fewer than all the parties does not end the
> action as to any of the claims or parties and
> may be revised at any time before the entry
> of a judgment adjudicating all the claims and
> all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

A motion for reconsideration is not freely granted. Reconsideration may occur if

> the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the court. Such problems rarely arise and the motion to reconsider should be equally rare. A motion for reconsideration should not be used to ask the court to rethink what the court had already thought through-- rightly or wrongly.

*Agravante v. Japan Airlines Int'l Co.*, 2007 WL 2175683, at *1-2 (D. Guam July 27, 2007) (quotation marks and citations omitted).

**III. ANALYSIS.**

In its order filed on December 21, 2018, this court cited the Eleventh Amendment in concluding that, under the Fair Housing Act, the United States may not recover money damages from Guam on behalf of individuals allegedly injured by Guam's preferential treatment of native Chamorros. The United States now argues that, even if the Eleventh Amendment protects Guam from money damage claims filed directly by individuals, the United States, under *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), may seek damages on their behalf. This argument is grounded in an analogy to the remedies available for employment violations of Title I of the Americans with Disabilities Act ("ADA"). The plain language of

the Fair Housing Act calls for a different conclusion in the present case.

In *Garrett*, the Supreme Court examined whether Congress had validly abrogated the states' Eleventh Amendment immunity with respect to claims asserted under Title I of the ADA. Ultimately, the Supreme Court ruled that Congress had exceeded its powers under section 5 of the Fourteenth Amendment when it abrogated that immunity. The Court said that, "to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." 531 U.S. at 967-68. Because those requirements were not met, the Court held that, despite the attempt by Congress to make states liable for violations of Title I of the ADA, states were protected by the Eleventh Amendment immunity from such claims by individuals.

Footnote 9 of the *Garrett* decision noted that Title I of the ADA did set forth standards applicable to states that could be enforced by the United States (as opposed to individuals) in actions seeking money damages. *Id*. at 968 n.9. Seizing on that footnote, the United States argues in the present case that it should similarly be allowed to seek money damages

from Guam in this Fair Housing Act case. This court is unpersuaded.

Title I of the ADA governs disability discrimination in employment. For violations of Title I of the ADA, courts look to Title VII for remedies:

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C.A. § 12117.

In relevant part, 42 U.S.C §§ 2000e-5(f)(1) and (2) allow the Attorney General to bring Title I ADA civil actions on behalf of the United States against governments, government agencies, and political subdivisions. Section 2000e-5(f)(1) allows aggrieved persons to intervene in such suits. In certain cases brought under § 2000e-5, courts may award compensatory damages to a "complaining party," which includes the Attorney General. *See* 42 U.S.C. § 1981a(a)(1) and (2); 42 U.S.C. § 1981a(d). But those damages are capped. *See* 42 U.S.C. § 1981a(b)(3). For example, respondents having more than 500 employees in a twenty-week period during the current or preceding calendar year have a maximum liability of $300,000 for such compensatory awards with respect to each complaining party. *See*

42 U.S.C. § 1981a(b)(3)(D). While Congress was unsuccessful in its attempt to abrogate the states' Eleventh Amendment immunity with respect to Title I ADA claims by individuals, states are liable when the Attorney General seeks damages from states under Title I of the ADA, but only up to the statutory cap on damages. The reference in footnote 9 in *Garrett* to the availability of damages should be read in the context of that cap.

This court notes that the parties have not challenged the concept that the Territory of Guam has immunity protections equivalent to those of a state. This court's order of December 21, 2018, stated that Guam has Eleventh Amendment immunity with respect to FHA claims asserted under 42 U.S.C. § 3613. This court now modifies that statement in a manner that does not affect the court's ultimate ruling. Guam's immunity is more accurately viewed as that accorded a sovereign that is not a state covered by the Eleventh Amendment. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 613 F. Supp. 381, 386 (D. Guam 1983) ("the Eleventh Amendment to the Constitution of the United States does not encompass unincorporated territories"). *See also Marx v. Gov't of Guam*, 866 F.2d 294, 298 (9th Cir. 1989) ("the government of Guam has inherent sovereign immunity"); *Capulong v. Dep't of Educ. of Guam*, 2011 WL 1134986, at *1 (D. Guam Mar. 24, 2011) ("The Organic Act of Guam invested the Government of Guam with sovereign immunity."). Whenever in its prior order this court

5

said that Guam was protected by the Eleventh Amendment, the order is amended to refer to Guam's sovereign immunity.  This distinction leaves intact this court's conclusion that money damages for individuals' alleged injuries are barred in this case, even if sought by the United States.

That Guam's immunity as a sovereign bars money damage claims brought by individuals under § 3613 follows from the Ninth Circuit's decision in *Marx*.  The Ninth Circuit noted, "The Supreme Court and this court have recognized that territorial governments have a form of inherent or common law sovereign immunity."  866 F.2d at 297.  Under that immunity, "[a] sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."  *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907).  *See also Porto Rico v. Rosaly y Castillo*, 227 U.S. 270, 273 (1913); *Crain v. Guam*, 195 F.2d 414, 416 (9th Cir. 1052).  Thus, Guam's sovereign immunity protects it from suit by individuals in much the same way as the Eleventh Amendment protects states.  In that respect, Guam has protections far beyond those a municipality might claim.

While 42 U.S.C. § 3614(d)(1)(b) provides that a court in a civil action brought by the Attorney General under § 3614(a) "may award such other relief as the court deems appropriate,

6

including monetary damages to persons aggrieved," the Fair Housing Act, unlike Title I of the ADA, does not say that monetary damages may be awarded against a sovereign for injuries to individuals who may not sue on their own behalf. *See McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510, 522 (5th Cir. 2015) (stating that the Fair Housing Act does not make "unmistakably clear" that Congress intended to abrogate the states' Eleventh Amendment immunity); *Mary's House, Inc. v. North Carolina*, 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013) (stating that the "FHA does not abrogate states' sovereign immunity under the Eleventh Amendment"); *Kalai v. Hawaii*, 2008 WL 3874616, at *2 (D. Haw. Aug. 20, 2008) ("FHA contains no clear congressional statement unequivocally expressing an intent to abrogate states' sovereign immunity"). The United States is authorized by § 3614 to seek money damages on behalf of "persons aggrieved" from cities and other actors not protected by the Eleventh Amendment or other sovereign immunity, but the Fair Housing Act does not provide the kind of authority against states found in Title I of the ADA.

Aggrieved persons may intervene in a Fair Housing Act case, but the relief available "to any such intervening party" is only what is "authorized to be granted to a plaintiff in a civil action under section 3613 of this title." 42 U.S.C. § 3614(e). Intervention against a city might afford an aggrieved person

money damages, but an aggrieved individual's Fair Housing Act money damages claim lodged directly against Guam under § 3613 would fail in light of Guam's immunity with respect to such claims. *See generally McCardell*, 794 F.3d at 521 (recognizing that state defendants had Eleventh Amendment immunity with respect to Fair Housing Act claims brought by private party); *Brooks v. Oakland Univ.*, 2013 WL 6191051, at *2 (E.D. Mich. Nov. 26, 2013) (relying on the Eleventh Amendment in barring Fair Housing Act claims asserted by a private party against a state university); *Kalai v. Hawaii*, 2008 WL 3874616, at *3 (D. Haw. Aug. 20, 2008) ("Plaintiff's FHA claims seeking damages against Defendant [State of Hawaii] are barred by the Eleventh Amendment."); *Kuchmas v. Towson Univ.*, 2007 WL 2694186, at *9 (D. Md. Sept. 10, 2007) ("this Court holds that the Eleventh Amendment bars private suits [under § 3613] against Towson University under the Fair Housing Act"); *Gregory v. S.C. Dep't of Transp.*, 289 F. Supp. 2d 721, 724-25 (D.S.C. 2003) (holding that the Eleventh Amendment barred private Fair Housing Act claims against South Carolina Department of Transportation). A*ccord Marx*, 866 F.2d at 298 (discussing Guam's sovereign immunity); *Capulong*, 2011 WL 1134986, at *1 (same). In short, an aggrieved person under the Fair Housing Act cannot directly or through intervention be awarded money damages against a state or, in this case, Guam.

In analogizing the Fair Housing Act to Title I of the ADA, the United States overlooks the absence in the Fair Housing Act of any indication that Congress intended to allow the United States to seek compensatory damages from states the way it may under Title I of the ADA. Nor does the Fair Housing Act plainly require such damages, as the United States contends on page 6 of its motion. Instead, 42 U.S.C. § 3614(d)(1)(b) allows this court to "award such . . . relief as the court deems appropriate, including monetary damages to persons aggrieved[,]" for Fair Housing Act violations established by the Attorney General. The Fair Housing Act is silent with respect to whether such damages may be awarded against a state or territory, and the word "including" refers to relief that is "appropriate." This language does not give rise to a right by the United States to compensatory damages against Guam on behalf of injured individuals.

This court, of course, recognizes that the Fair Housing Act and Title I of the ADA are both civil rights laws enacted to end discrimination. Standing to assert civil rights is construed broadly. *See Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 209 (1972). The same legal framework applies to both Fair Housing Act and ADA claims. *See Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). However, these principles do not require a court to construe the statutory

remedy provisions identically or to ignore obvious statutory differences.

This is not a situation in which similarly worded statutes should be given the same meaning. *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.") (plurality opinion); *see also United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc) ("Moreover, courts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter."). Congress certainly knew how to explicitly state that the United States could recover compensatory damages from states in Fair Housing Act claims brought on behalf of individuals. Congress did not do so. Congress chose to draft the Fair Housing Act and Title I of the ADA differently. Accordingly, the court is not persuaded that *Garrett*'s footnote applies here.

In footnote 2 on page 3 of its brief of February 15, 2019, the United States tries to bolster its ADA analogy by pointing to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Age Discrimination in Employment Act ("ADEA") as also authorizing damage actions by the United

States on behalf of private persons. But USERRA, unlike the Fair Housing Act, expressly provides for such damages. *See* 38 U.S.C. § 4323(d)(3) (citing USERRA on "Enforcement of rights with respect to a State or private employer" and stating that "A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section."). The United States' citation of *EEOC v. Board of Regents Of University Of Wisconsin System*, 288 F.3d 296, 299-301 (7th Cir. 2002) (ADEA case), is no more persuasive. That case relied on *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), to conclude that a state's immunity from private damage suits does not shield it from suit by the EEOC. But *Waffle House* arose in the ADA context and therefore, as discussed earlier, concerned a framework distinguishable from the Fair Housing Act.

This court stresses that it has never ruled that Guam is immune with respect to money damage claims brought by the United States for injury to the United States itself. This court is instead concerned about whether the United States may sue on behalf of individuals who may not recover damages directly from states or territories because of immunity protections. As the United States posits, suits by the federal Government are fundamentally different from private causes of action because the United States has an interest in enforcing federal law. But that fundamental difference makes sense when the United States is

suing for itself.  In the Fair Housing Act, Congress has not clearly authorized a distinguishable right on the part of the federal government to seek compensatory damages on behalf of individuals in the face of Eleventh Amendment or common law sovereign immunity.

In the usual case, the general rule is that, "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."  *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 70-71 (1992).  But the Ninth Circuit has clarified that, "[a]t the same time, it is critical that when deciding which remedies are appropriate in a given situation, we attempt to infer how Congress would have addressed the issue if it had done so at the time the law was passed."  *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 813 (9th Cir. 2007) (quotation marks, alterations, and citation omitted).

*United States v. City of Hayward*, 36 F.3d 832 (9th Cir. 1994), provides guidance here.  In that case, the United States sought declaratory, injunctive, and monetary relief for a Fair Housing Act violation by a municipality.  The district court awarded only the requested injunction, reasoning that monetary damages were discretionary.  *Id.* at 838-39.  The Ninth Circuit reversed, ruling that the United States should have been given

the opportunity to prove actual damages because compensatory damages under the Fair Housing Act are not discretionary whenever a plaintiff proves actual damages. *Id.* at 839. The Ninth Circuit looked to the legislative history of the Fair Housing Act's remedy provision, noting that "[a]llowing the court to award monetary relief to persons aggrieved avoids later duplicative litigation as such persons bring actions to vindicate their rights." 36 F.3d at 840 (quoting House Rep. No. 711, 100th Cong., 2d Sess., 40 (1988)), *reprinted in*, 1988 U.S.C.C.A.N. 2201). While the cited House Report also states "that relief may be awarded to all persons aggrieved," it does not describe what relief should be awarded, other than relief designed to prevent duplicative actions. Here, there is no risk of duplicative actions. The immunity bar for direct claims by aggrieved individuals against Guam assures the absence of duplicative cases. Given this circumstance, it makes no sense to read the plain language of § 3614 or its legislative history as providing that the United States, acting on behalf of individuals, may recover damages from Guam for alleged violations of the Fair Housing Act.

Particularly helpful to this court in trying to discern whether Congress intended to allow the kind of damage claim the United States asserts here against Guam is the Ninth Circuit's decision in *Kay*. In that case, an amateur radio broadcaster

13

sought compensatory damages from a municipality for alleged violations of the Telecommunications Act in connection with the municipality's denial of a conditional use permit. The Ninth Circuit noted that the Telecommunications Act was silent with respect to congressional intent on the question of compensatory damages. *Kay*, 504 F.3d at 813. Instead of applying the general rule allowing such damages as appropriate relief, the Ninth Circuit posited that Telecommunication Act plaintiffs are usually large telecommunications companies for whom adverse zoning or permitting decisions may result in substantial damages against a municipality. The Ninth Circuit noted that the "potential for large damages claims, even if they are not ultimately awarded, suggests that Congress did not intend to create a damages remedy" for Telecommunication Act claims. *Id.*

The specter in *Kay* of large damage claims that might intimidate a municipality into issuing permits is analogous to the possibility of debilitating damage claims in the present case. The United States could conceivably seek compensatory damages from Guam on behalf of every person who might have wanted to share in the benefits of the Chamorro Land Trust but was deemed ineligible. Such persons might constitute most of the population of Guam. Because the Chamorro Land Trust leases land to eligible persons for $1 per year, damages might amount to years of rent or mortgage payments made by aggrieved persons,

minus $1 per year.  If Congress intended to allow the United States to potentially bankrupt Guam, surely Congress would have more clearly indicated that.

This court in no way establishes here a categorical rule precluding an expressly authorized form of relief.  *See Waffle House*, 534 U.S. at 292 (reading the discretionary language in the ADA discrimination claim under § 1981a(a)(1) as providing for a trial judge's discretion to order reinstatement and damages in an amount warranted by the facts of the case, not for a categorical rule precluding expressly authorized remedies as inappropriate in all cases).  Instead, this court is concluding that the language and history of the Fair Housing Act provide no congressional signal that the United States may recover compensatory damages against a state or territory on behalf of aggrieved persons who could not directly seek those damages.  Any such award would be a windfall for persons not otherwise able to recover money damages from Guam; the potential magnitude of such a large award could fiscally ruin Guam.  What the United States is doing is arguing for an extension of rights that Congress has not clearly spoken to.  Under these circumstances, the United States' reliance on *Waffle House* is misplaced.

Nor is the United States' reliance on *United States v. Tanski*, 2007 WL 1017020, at *8 (N.D.N.Y. Mar. 30, 2007), warranted.  In that case against private wrongdoers, the district

court applied the three-year limitation period for compensatory damages under the Fair Housing Act to claims brought by the United States, rather than the two-year limitation period that would have applied had the aggrieved person brought the claim directly. The United States argues that this shows that the United States may recover damages for individuals who may not recover damages directly. A limitation period is not the same as sovereign immunity. In the present case, individuals acting on their own behalf could never have recovered damages against Guam.

This court declines to step into the legislative role urged upon it by the United States.

**IV. CONCLUSION.**

The United States' motion for reconsideration is denied.

IT IS SO ORDERED.

DATED: April 25, 2019.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States of America v. Government of Guam, et al.*, Civ. No. 17-00113 ; ORDER DENYING PLAINTIFF UNITED STATES OF AMERICA'S MOTION TO REVISE ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS