# Exhibit A

*United States v. Government of Guam, et al.* **(D. Guam), Civil No. 17-cv-00113**

### SETTLEMENT AGREEMENT
### BETWEEN THE UNITED STATES OF AMERICA AND
### GOVERNMENT OF GUAM, CHAMORRO LAND TRUST
### COMMISSION & ADMINISTRATIVE DIRECTOR OF THE
### <u>CHAMORRO LAND TRUST COMMISSION</u>

## I.    INTRODUCTION

1.      This Settlement Agreement ("Agreement") is entered into between Plaintiff, the United States of America ("the United States"), through the Department of Justice, and Defendants, the Government of Guam, the Chamorro Land Trust Commission ("the CLTC"), and the Administrative Director of the CLTC (collectively, "Defendants"), through their authorized representatives.  The United States and Defendants are referred to herein collectively as the "Parties."

2.      This Agreement resolves the allegations contained in the United States' lawsuit, *United States v. Government of Guam, et al.*, Civil No. 17-cv-00113, filed in the United States District Court for the District of Guam against Defendants on September 29, 2017 (hereinafter "Civil Action").   The Civil Action alleges that Defendants violated Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3631 ("the Fair Housing Act" or "the FHA"), by discriminating against non-Chamorros through enforcement of the Chamorro Land Trust Act, 21 GUAM CODE ANN. ("G.C.A.") ch. 75 ("the CLTA"), and its implementing regulations.

## II.    RECITALS

3.      Defendant Government of Guam is the territorial government of Guam by virtue of the Organic Act of 1950, as codified and amended under 48 U.S.C. § 1421 *et seq*., and related federal laws.

4. Defendant Chamorro Land Trust Commission is an instrumentality of the Government of Guam pursuant to the CLTA. It is composed of five members who are appointed by the Governor and confirmed by the Guam Legislature. 21 G.C.A. § 75102(a).

5. The CLTC appoints and employs Defendant Administrative Director who has "full charge of and responsibility for the administration and execution of all actions approved by the commission [] in effectuating commission policy." Guam Pub. L. 23-38 § 3.2 (1995).

6. In 1975, the Government of Guam enacted the CLTA, which transferred all unused and unreserved Government of Guam land (public land) to the CLTC. Guam Pub. L. 12-226 (1975).

7. As originally passed in 1975, the CLTA defined "native Chamorro," the category of individuals eligible for long-term land leases under the CTLA, as "any person who the Commission determines to be of at least one-fourth part of the blood of any person who inhabited the island prior to 1898." Guam Pub. L. 12-226 (1975).

8. In 1980, the Guam Legislature amended the CLTA's definition of "native Chamorro" to read "any person who became a U.S. citizen by virtue of the authority and enactment of the Organic Act of Guam or descendants of such person." Guam Pub. L. 15-118 (1980).

9. Some of the lands that are provided to lessees by the CLTC pursuant to the CLTA, including any lands designated for residential use, are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

10. The United States' Complaint alleges that Defendants' restriction of leases under the CLTA to "native Chamorros" violates the Fair Housing Act, 42 U.S.C. §§ 3604(a)-(c) & 3605(a). The United States' Complaint further alleges that Defendants, through their conduct,

engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, in violation of 42 U.S.C. § 3614(a), and denied to a group of persons rights granted by the Fair Housing Act, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a). Defendants do not admit liability and deny that the CLTA violates the Fair Housing Act.

11. The Parties agree and the United States believes that it is in the public's best interest that the Civil Action should be resolved amicably and without further litigation.

12. To avoid the delay, uncertainty, inconvenience and expense of protracted litigation of the United States' claims, and in consideration of the mutual promises and obligations set forth below, the Parties agree and covenant to the following material terms and conditions:

### III. STATEMENT OF CONSIDERATION

13. The United States and Defendants have agreed that this action should be resolved without further proceedings. Accordingly, in consideration of, and consistent with, the terms and conditions of this Agreement described below, the United States and Defendants agree to move jointly for dismissal of the Civil Action, subject to the terms set forth in Paragraph 34. The Parties agree and acknowledge that this consideration is adequate and sufficient.

### IV. TERMS AND CONDITIONS

### A. PROHIBITED CONDUCT AND AFFIRMATIVE OBLIGATION

14. In accordance with the Fair Housing Act, Defendants, through their officers, employees, agents, and all other persons or entities in active concert or participation with them, shall not:

a.      Discriminate against any person in the sale or rental, or otherwise make unavailable or deny, a dwelling, as that term is defined by the FHA, 42 U.S.C. § 3602(b), (which includes vacant land offered for sale or lease for the construction or location thereon of any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families) because of race or national origin;

b.      Discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race or national origin;

c.      Make, print, publish, or cause to be made any notice, statement, or advertisement with respect to the sale or rental of a dwelling that states any preference, limitation, or discrimination based on race or national origin;

d.      Discriminate based on race or national origin against any person in the making or purchasing of loans, or the provision of other financial assistance, for the purchasing, constructing, improving, repairing, or maintaining of a dwelling; or

e.      Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the FHA or under this Agreement.

## B.    TRAINING

15.     Within 180 days after the effective date of this Agreement, the Commissioners, Administrative Director, and employees of the CLTC shall attend, at Defendants' expense, an in-person education and training program on the requirements of the Fair Housing Act, including the prohibitions against discrimination based on race and national origin.  The training shall be conducted by a qualified third party approved in advance by the United States.  Within ninety (90) days after the effective date of this Agreement, Defendants shall provide to the United States the name and resume of the proposed qualified third-party trainer, the proposed agenda, and the proposed handouts, which the United States shall review and approve for content and form.

16.     No later than fifteen (15) days after the training, Defendants shall provide to the United States certifications executed by all individuals who attended the training.[1]  The certifications shall be in the form of Attachment A.

17.     Within thirty (30) days after commencing employment, any individual in any of the positions listed in Paragraph 15 shall be required to review a video of the training outlined in Paragraph 15 and complete the certification at Attachment A.  Such certifications shall be available for inspection by the United States.

18.     Within thirty (30) days after the effective date of this Agreement, the CLTC shall provide a copy of this Agreement to its Commissioners, Administrative Director, and employees.

---

[1]  All materials required by this Agreement to be sent to counsel for the United States shall be sent by private business carrier (non-USPS) delivery service addressed as follows: Chief, Housing & Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M Street, NE, Washington, DC 20002, Attn: DJ 175-91-3.  Such materials shall also be sent by business carrier or hand delivery to:  United States Attorney's Office, Sirena Plaza, Suite 500, 108 Hernan Cortez Avenue, Hagåtña, Guam 96910, Attn: DJ 175-91-3. Correspondence may also be sent via electronic mail to the U.S. Department of Justice, care of the undersigned counsel for the United States.

Defendants shall make an individual with knowledge available to answer any questions the Commissioners, Administrative Director, and employees have about this Agreement.

### C.    LEGISLATIVE AND ADMINISTRATIVE CHANGES

19.    Consistent with Paragraph 21 below, Defendants agree to amend, modify, or revise the Chamorro Land Trust Act and/or the Rules and Regulations of the CLTC, as appropriate, as follows:

     a.     All references to the terms "Chamorro," "native Chamorro," and "Chamorro homelands" (or any variations thereof) shall be replaced with "beneficiary," "eligible beneficiary," and "Chamorro Land Trust property," respectively, except as provided in subparagraphs (b) and (d) below.  References to the "Chamorro Land Trust Act," "Chamorro Land Trust Commission," "Hatdin Åmot Chamorro," "Chamorro traditional healing or medicine," "Chamorro heritage and culture," "traditional Chamorro medicines," "Chamorro healing arts," and "traditional Chamorro remedies" need not be revised.

     b.     Section 75101(c) of the CLTA shall be revised to state as follows: "The term 'Chamorro Land Trust property' means all available lands, which includes Chamorro homelands, under the control of the Chamorro Land Trust Commission under the provisions of § 75105 of this Chapter."

     c.     Section 75101(d) of the CLTA shall be revised to state as follows: "The term 'eligible beneficiary' means any person, regardless of race, color, or national origin:

i.        whose land was acquired by the United States government between 1898 and 1968, or descendants of such person; or

ii.       who occupied, farmed, or ranched land for residential or agricultural purposes for at least one year immediately prior to that land being acquired by the United States government between 1898 and 1968, or descendants of such person; except that if the person occupied, farmed, or ranched the land on or after December 8, 1941, and the land was acquired at any time after that date and up to 1950, the one-year tenure need not have occurred immediately prior to acquisition by the United States government."

d.      The beginning of Section 75105 of the CLTA shall be revised to state as follows: "Upon and after the enactment of this Chapter, all available lands pursuant to § 75104, which includes Chamorro homelands, shall immediately assume the status of Chamorro Land Trust property and shall be under the control of the Commission...."

e.      The following language shall be added to the CLTA and/or Rules and Regulations of the CLTC: "Verification of Eligible Beneficiaries –

i.       Owned Land Acquired by the United States: To be eligible based on ownership of land that was acquired by the United States Government between 1898 and 1968, an applicant must provide either (a) documentary evidence of ownership in substantially the same form as that required by the Guam Ancestral Lands Commission for ancestral land claims; or (b) a declaration or

-7-

affidavit, signed under penalty of perjury, attesting that the applicant owned, or is the descendant of someone who owned land that was acquired by the United States. To the extent known or reasonably ascertainable by the applicant, this declaration or affidavit shall include the location, by parcel number, address, legal description, or other legally-recognized identifier, of the land that was claimed to have been owned and the date of acquisition by the United States. The applicant shall be required to use his or her best efforts to obtain the information described above. The applicant must also provide documentation demonstrating that he or she is the descendent of the person who owned the land. Based upon review of the documentation, declarations or affidavits, and any additional research the CLTC conducts, including but not limited to the 'Bohn files' and any other readily-available condemnation and land records, the CLTC shall determine whether the applicant is an eligible beneficiary.

ii. Occupied, Farmed, or Ranched Land Acquired by the United States: Persons shall be considered 'eligible beneficiaries' if the United States acquired land on which they did not hold title or ownership, but that they nevertheless had occupied, farmed, or ranched for a continuous, one-year period of time as of the date of acquisition by the United States, except that a person is eligible if he or she had occupied, farmed, or ranched the land for a one-year

period on or after December 8, 1941, and the land was acquired at any time between December 8, 1941 and 1950. To be eligible under this provision, an applicant must sign a declaration or affidavit setting forth, in sufficient detail and under penalty of perjury, the following facts to the extent known or reasonably ascertainable by the applicant:

1.  the location, by parcel number, address, legal description, or other legally-recognized identifier, of the land that was claimed to have been occupied, farmed, or ranched;

2.  the name of the person or persons who occupied, farmed, or ranched the land;

3.  the length of time the person(s) continuously occupied, farmed, or ranched the land;

4.  the legal owner of the land and the relationship between the owner and the person who occupied, farmed, or ranched the land, including whether any compensation or rent was paid to the owner;

5.  a description of the nature of the person's activity on the land, including whether the land was used for residential or agricultural purposes;

6.  if the land was farmed or ranched, the type of activity being conducted on the land (such as the types of crops harvested or animals raised); and

7.      whether the person improved the land in any way and the nature of such improvements.

The applicant must also provide documentation demonstrating that her or she is the descendent of the person or persons who occupied, farmed, or ranched the land. The applicant shall be required to use his or her best efforts to obtain the information described above. Based upon review of the documentation, declarations or affidavits, and any additional research the CLTC conducts, the CLTC shall determine whether the person is an eligible beneficiary. For purposes of this provision, a person shall be deemed to have 'occupied' land if he or she maintained his or her primary residence on the land."

f.      The third sentence of Section 75109(a) of the CLTA shall be revised to state: "Such person or persons must be qualified to be a lessee of Chamorro Land Trust property: provided, that such person or persons need not be eighteen (18) years of age; provided, further, however, that if the person designated by the lessee (1) is the lessee's spouse; (2) has been married to the lessee for at least the past seven years; (3) is residing on the property with the lessee in a structure that has been approved as a residence at the time of the lessee's death; and (4) is not an eligible beneficiary as defined under this Act, such person shall, upon the death of the lessee, receive a life estate in the remainder of the lease, and upon termination of the life estate, assignment of the lessee's remaining interest

-10-

in the lease shall be governed by the applicable provisions of the

Chamorro Land Trust Act as if the lessee had died without designating his

or her spouse as a beneficiary."

g.    The Rules and Regulations of the CLTC, as well as any sub-regulatory

rules, policies, practices, or guidance, shall be modified to be consistent

with the amendments, modifications, and revisions to the CLTA required

by this Paragraph.

20.    The Parties understand and agree that this Agreement is contingent upon the

enactment of legislation by the Guam Legislature, including amendments, revisions, or

modifications to the Chamorro Land Trust Act and Rules and Regulations of the CLTC, that are

substantially in the same form as the terms in Paragraph 19 of this Agreement and otherwise

consistent with the Agreement.  Defendants shall make diligent efforts to seek enactment of any

legislation necessary to comply with and carry out the terms of this Agreement.  If, within one

(1) year of the effective date of this Agreement, Defendants fail to obtain enactment necessary to

comply with this Agreement, the United States retains all rights, including the right to withdraw

consent to this Agreement and revive all claims otherwise barred by operation of this Agreement.

21.    Within ninety (90) days after the effective date of this Agreement, Defendants

shall determine whether and to what extent any part of this Agreement may be implemented

through executive or CLTC action and without action by the Guam Legislature.  Defendants

shall notify the United States of its determinations and their legal bases and shall so implement

this Agreement, in whole or in part, where authorized by law.  To the extent implementation may

be conducted (including as an interim measure prior to enactment of legislation) through

executive or CLTC action, Defendants shall take such action within 150 days after the effective date of this Agreement.

22.     Only those applications for leases that have not been approved as of the effective date of this Agreement shall be subject to the terms of this Agreement.  This Agreement shall not affect the order of consideration of applications by the CLTC.  Nothing in this Agreement shall affect or alter the existing priorities for awarding leases as stated in Rule 6.2 of the Rules and Regulations of the Chamorro Land Trust Commission.

23.     Defendants shall make reasonable efforts to notify current lessees and applicants of the changes made pursuant to Paragraphs 19 and 21-22 above, including posting such changes on the CLTC's website.

24.     Nothing in Paragraph 19 shall bind the United States or its agencies in any case (including claims for compensation for land, eminent domain, or interest in land) other than the Civil Action or an action to enforce this Agreement.

## D.     MOTION TO VACATE DISTRICT COURT'S ORDERS RELATED TO DAMAGES

25.     The parties recognize that, as a term of this Agreement, the United States shall file, within twenty-one (21) days after the effective date of this Agreement, a motion in the Civil Action to vacate only those portions of the Court's December 21, 2018 and April 25, 2019 orders holding that the United States is barred from obtaining damages on behalf of aggrieved persons under the Fair Housing Act in this case, and that Defendants shall not oppose this motion. Nothing in this Agreement shall authorize the United States to seek damages in this case.

## E.     ADDITIONAL RECORD-KEEPING AND REPORTING REQUIREMENTS

26.     For the duration of this Agreement, Defendants shall retain all records relating to the implementation of and compliance with the provisions of this Agreement.  The United States

-12-

shall have the right to review and copy any such records, including electronic data, upon reasonable notice. Defendants agree to cooperate with the United States in any review of compliance with this Agreement. Nothing in this paragraph shall be construed as a waiver of any applicable privileges.

27. During the term of this Agreement, Defendants shall notify counsel for the United States in writing within fifteen (15) days of their receipt of any FHA complaint or any written complaint that alleges race and/or national origin discrimination by the CLTC in administering the CLTA and/or CLTC Rules and Regulations. If any individual or organization makes an oral complaint alleging discrimination by the CLTC, Defendants shall, to the extent practicable, instruct the complainant to reduce the complaint to writing. Defendants shall provide a copy of any written complaint with the notification to counsel for the United States. The notification to the United States shall include the full details of the complaint, including the complainant's name, address, and telephone number, and the full details of all actions any Defendant or Defendants took to resolve the complaint. Defendants shall also promptly provide the United States all information it may request concerning any such complaint. If the United States raises any objections to Defendants' actions, the Parties shall meet and confer to consider appropriate steps to address any concerns raised by the United States.

## V. IMPLEMENTATION AND ENFORCEMENT

28. The United States may take steps to monitor the Defendants' compliance with this Agreement, including, but not limited to, conducting fair housing tests related to the CLTC's activities and implementation of this Agreement, as per the Civil Rights Division Fair Housing Testing Program.

29. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of or compliance with this Agreement prior to initiating court action. If the United States believes that any Defendant has failed to perform in a timely manner any act required by this Agreement, or has otherwise not acted in conformance with any provision thereof, whether intentionally or not, the United States will notify Defendants in writing of its concerns. The Defendant(s) alleged to have breached the Agreement will have thirty (30) days from the date of notification to resolve the issue raised by the United States to the Parties' mutual satisfaction.

30. If the Parties are unable to reach a resolution within thirty (30) days, the United States may seek appropriate relief from the Court prior to dismissal of the Civil Action or, if the Civil Action has been dismissed pursuant to Paragraph 34, the United States may file an action for breach of this Agreement, or any provision thereof, in the United States District Court for the District of Guam. In any action filed under this Paragraph, the Parties agree not to contest the exercise of personal jurisdiction over the Parties by the District Court of Guam, and not to contest that the proper and appropriate venue is the District Court of Guam.

31. In any action or proceeding brought by United States to enforce this Agreement, the United States may seek, and the Court may grant as relief, the following: (1) an order mandating specific performance of any term or provision in this Agreement, without regard to whether monetary relief would be adequate; and (2) any additional relief that may be authorized by law or equity. In any such action or proceeding, the Defendants agree not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of statute of limitations, estoppel, laches, or similar defenses.

-14-

32.     In the event that the United States withdraws consent to this Agreement and seeks to revive its claims for alleged violations of the Fair Housing Act, which would be for the sole reason of Defendants' failure to obtain enactment of legislative changes within one year as contemplated by Paragraph 20, the Defendants agree not to count the time during which the Civil Action was pending or this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of statute of limitations, estoppel, laches, or similar defenses.  In such an event, Defendants also agree not to use the Court's dismissal of the Civil Action pursuant to Paragraph 34 to plead, argue, or otherwise raise any defenses under a theory of claim or issue preclusion.

33.     Failure by the United States to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

34.     Within twenty-five (25) days after the effective date of this Agreement, the parties shall jointly move the Court for dismissal with prejudice of the Civil Action, except that the parties shall agree that the Court will retain jurisdiction to consider the United States' unopposed motion for vacatur.

## VI.     TERMINATION OF LITIGATION HOLD

35.     The Parties agree that, as of the date of the dismissal of the Civil Action, litigation is not reasonably foreseeable concerning the matters described in the United States' Complaint. To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves

any Party of any other obligations imposed by this Agreement, including Defendants' obligation to preserve documents under Paragraph 26.

## VII.  DURATION, EXECUTION, AND OTHER TERMS

36.     This Agreement is effective on the date of signature of the last signatory to the Agreement.  The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

37.     The duration of this Agreement shall be for a period of four (4) years from the date of execution.  Defendants may seek to terminate this Agreement prior to its expiration if they demonstrate to the United States that they have reached "durable compliance" with this Agreement.  "Durable compliance" means "full, effective, and lasting compliance" with this Agreement.  To achieve full, effective, and lasting compliance, Defendants must demonstrate that they have (a) complied with the Fair Housing Act's prohibitions against discrimination based on race or national origin; (b) provided training to relevant CLTC employees and officials as required by Paragraphs 15-18; (c) enacted the legislative changes as required by Paragraph 19; (d) implemented executive or CLTC action as required by Paragraph 21; and (e) completed the notification required by Paragraph 23.  Full, effective, and lasting compliance must be continuously maintained for all of the requirements referenced herein for at least two years prior to termination of the Agreement.  The United States shall have sole discretion to determine whether full, effective, and lasting compliance has been achieved, but the United States shall not unreasonably withhold consent to early termination of this Agreement.

38.     Defendants may seek to terminate a part of the Agreement if (a) they demonstrate that they have reached full, effective, and lasting compliance for at least one year with a part of

the Agreement; and (b) that part of the Agreement is sufficiently severable from the other requirements of the Agreement. In determining whether there is full, effective, and lasting compliance with a part of the Agreement, all the requirements of the Agreement may be assessed collectively to determine whether the intended outcome of the part has been achieved. The United States shall have sole discretion to determine whether full, effective, and lasting compliance has been achieved and whether the part to be terminated is sufficiently severable from the other requirements of the Agreement, but the United States shall not unreasonably withhold consent to early termination of a part of this Agreement.

39.    Each Party shall bear its own legal and other costs incurred in connection with this litigation, including the preparation, negotiation, and performance of this Agreement, except as set forth in Paragraph 31.

40.    This Agreement constitutes the complete agreement between the Parties. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

41.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion. The Parties agree that each Party and its representatives have acted consistent with the duty of good faith and fair dealing.

42.    The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

43.     For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

44.     Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another Party, the performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another Party.

45.     Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

46.     The Parties agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Agreement is illegal or invalid.

47.     The Parties agree that they will defend this Agreement against any challenge by any third party.  In the event that this Agreement or any of its terms are challenged by a third party in a court other than the United States District Court for the District of Guam, the Parties agree that they will seek removal and/or transfer to the District of Guam.

48.     This Agreement is binding on the Parties, including all principals, officers, employees, agents, contractors, representatives, assignees, successors in interest, and all those in active concert or participation with any of them.  Each Party has a duty to inform any such successor in interest.

49.     Any time limits for performance imposed by this Agreement may be extended by the mutual written agreement of the Parties.

50.     This Agreement may be modified only with the written consent of the Parties. Any modifications must be in writing and signed by the Parties through their authorized representatives.

51.     This Agreement is a public document.  Both Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

*For the United States of America:*

Dated:  June 4, 2020, at Washington, D.C.

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief
R. TAMAR HAGLER
Deputy Chief
KATHRYN LEGOMSKY
MAX LAPERTOSA
ALAN MARTINSON
Trial Attorneys
United States Department of Justice
Housing and Civil Enforcement Section
Civil Rights Division
950 Pennsylvania Avenue N.W. – 4 CON
Washington, DC  20530

-19-

*For the Government of Guam & Administrative Director of the Chamorro Land Trust Commission:*

GOVERNMENT OF GUAM


**LOURDES A. LEON GUERRERO**
Governor of Guam

Dated: 29 May 2020


**JACK E. HATTIG, III**
Administrative Director
Chamorro Land Trust Commission


Approved as to form and legality:

Dated: 5/29/2020


HON. LEEVIN TAITANO CAMACHO
ATTORNEY GENERAL OF GUAM


**JAMES L. CANTO II**
Deputy Attorney General
Litigation Division
590 South Marine Corps Drive
Tamuning, GU 96913

*For the Chamorro Land Trust Commission:*

Dated: **5·28·20**

_____
G. PIKA FEJERAN
Chairwoman
Chamorro Land Trust Commission

Approved as to form and legality:

Dated: 5/28/20

LAW OFFICES OF PHILLIPS & BORDALLO

_____
MICHAEL F. PHILLIPS
*Special Assistant Attorney General*
410 West O'Brien Drive, Suite 102
Hagåtña, GU 96910-5044

-21-

**<u>ATTACHMENT A</u>**

**FAIR HOUSING ACT TRAINING CERTIFICATION**

I certify that I attended Fair Housing Act training. I further certify that I understood the training and that any questions I had concerning the training were answered.

I understand that federal law prohibits discrimination against individuals on the basis of race or national origin. I understand that, in carrying out my duties for the Chamorro Land Trust Commission, federal law prohibits me from considering an applicant's or beneficiary's race or national origin in determining their eligibility to lease land from the Chamorro Land Trust Commission.

With this understanding, I agree to comply with the Fair Housing Act in carrying out my duties for the Chamorro Land Trust Commission.


_____         _____
(Signature)                                      (Printed Name)


_____         _____
(Title)                                          (Date)