```
                IN THE UNITED STATES DISTRICT COURT

                   FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,     )   CIVIL CASE NO. 17-00113
                              )
         Plaintiff,           )   ORDER DENYING PLAINTIFF UNITED
                              )   STATES OF AMERICA'S MOTION TO
    vs.                       )   VACATE ORDERS
                              )
GOVERNMENT OF GUAM;           )
CHAMORRO LAND TRUST           )
COMMISSION; and               )
ADMINISTRATIVE DIRECTOR OF    )
THE CHAMORRO LAND TRUST       )
COMMISSION,                   )
                              )
         Defendants.          )
_____)
```

**ORDER DENYING PLAINTIFF
UNITED STATES OF AMERICA'S MOTION TO VACATE ORDERS**

**I.      INTRODUCTION.**

Plaintiff United States of America seeks to vacate this court's rulings stating that the United States, acting on behalf of individuals claiming to have been victims of housing discrimination by the Territory of Guam, may not pursue damages for those individuals pursuant to 42 U.S.C. § 3614 of the Fair Housing Act. The United States, pointing to the settlement that the parties have reached in this case, expresses concern that this court's rulings might be cited in other Fair Housing Act disputes. The court denies the motion to vacate.

## II. BACKGROUND.

On September 21, 2017, the United States filed the present action, arguing that the Chamorro Land Trust Act violated the Fair Housing Act by offering housing benefits in the form of land leases only to "native Chamorros," which the United States characterized as a racial classification. *See* Document No. 1. The United States sought summary judgment on the racial classification issue. This court denied summary judgment on that issue, noting that there were questions of fact as to whether "native Chamorros" was a reference to individuals whose land had been allegedly confiscated without just compensation for use by the military during World War II, and as to whether the Chamorro Land Trust Act was actually a method of compensating those individuals.

A related motion raised the question of whether the United States could recover money damages under the Fair Housing Act from Guam on behalf of individuals allegedly injured by Guam's preferential violation of the Fair Housing Act. Citing Guam's sovereign immunity, this court ruled ("Damages Ruling") that the United States could not recover such damages on behalf of individuals who would have themselves been barred by Guam's sovereign immunity from suing Guam directly. *See* 2019 WL 1867426 (D. Guam Apr. 25, 2019) (Order Denying Plaintiff United States of America's Motion to Revise Order Granting in Part Defendants'

Motion for Judgment on the Pleadings); and 2018 WL 6729629 (D. Guam Dec. 21, 2018) (Section V.B. of Order Denying Plaintiff's Motion for Partial Judgment on the Pleadings; Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings and Joinder Therein).

On June 5, 2020, after extensive settlement discussions led by Magistrate Judge Barry M. Kurren, the parties settled this action. The settlement is not contingent on a vacatur by this court of its Damages Ruling. *See* Document No. 95-1 (Settlement Agreement Between the United States of America and Government of Guam, Chamorro Land Trust Commission & Administrative Director of the Chamorro Land Trust Commission).

On June 23, 2020, the court dismissed this action pursuant to the settlement agreement, reserving the right to address this unopposed motion to vacate the Damages Ruling. *See* Document Nos. 96, 102.

**III.    ANALYSIS.**

In *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994), the Supreme Court examined whether the Ninth Circuit should have granted a motion to vacate its opinion after the parties reached a settlement. The Court held that mootness because of a settlement, rather than because of happenstance, "does not justify vacatur of a judgment under review." The Supreme Court stated that whether the Ninth Circuit

3

should have vacated its opinion involved an equitable determination and that vacatur should be granted only in "exceptional circumstances." *Id.* That is because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 26 (quotation marks and citation omitted).

Several years later, the Ninth Circuit limited *Bonner Mall* to circumstances involving a settlement that is reached while a case is on appeal. The Ninth Circuit said that "a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." *Am. Games, Inc. v. Trade Prod., Inc.*, 142 F.3d 1164, 1170 (9th Cir. 1998). Thus, "a district court may vacate its own decision in the absence of extraordinary circumstances." *Id.* at 1168. A district court may consider "the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Id.* (quotation marks and citations omitted). The Ninth Circuit noted that district courts should also examine "the motives of the party whose voluntary action mooted the case," *id.*, and cautioned that district courts should keep in mind public policy considerations to prevent

4

litigants from manipulating the common law to erase or bury unfavorable decisions. *Id.* at 1170.

Cases subsequent to *American Games* have applied this equitable balancing test to determine whether a district court should vacate its orders. In *Ayotte v. American Economy Insurance Company*, 578 F. App'x 657 (9th Cir. 2014), for example, the Ninth circuit stated:

> *American Games* holds that *Bonner Mall* did not overrule this court's established procedure of remanding a vacatur request so that the district court can apply an equitable balancing test. *American Games* sets out various considerations that a district court should consider. The considerations include, but are not limited to, the consequences and attendant hardships of dismissal or refusal to dismiss, the competing values of finality of judgment and right to relitigation of unreviewed disputes, the motives of the party whose voluntary action mooted the case, and the public policy against allowing a losing party to buy an eraser for the public record.

*Id.* (quotation marks and citations omitted). District courts have cited *Ayotte* and *American Games* for the same proposition. *See Ctr. For Biological Diversity v. United States Army Corps of Engineers*, 2020 WL 2027229, at *2 (C.D. Cal. Jan. 7, 2020); *In re CytRx Corp. Stockholder Derivative Litig.*, 2016 WL 6571265, at *2 (C.D. Cal. Aug. 17, 2016).

Applying this equitable balancing test, the court declines to vacate its Damages Ruling. The United States argues that, as a repeat player before the court with respect to Fair

5

Housing Act claims, it is concerned about the impact of this court's Damages Ruling on other cases.  It argues that because an appellate court will not review the Damages Ruling given the settlement, other courts may be inappropriately influenced by it.  The United States points out that, under the terms of the settlement agreement, it will not seek damages from Defendants and that Defendants agreed not to oppose this motion.  This court is not persuaded to vacate the Damages Ruling.  It is not this court's practice to vacate its rulings when the parties settle a case and, having balanced the equities, this court concludes that vacatur is not warranted here.

The United States knew when it settled the case that this court's Damages Ruling might continue to be available to litigants and other courts.  The United States gave up the right to appeal this court's Damages Ruling as part of settling and avoiding protracted litigation, hoping that this court would balance the equities and determine that the public interest in preserving the Damages Ruling was outweighed by the Government's concern that other courts might find the Damages Ruling persuasive.

The court recognizes that litigants and courts might cite the Damages Ruling.  However, there is a dearth of reported cases involving Fair Housing Act claims by the United States against a territory or state, or against a territorial or state

agency.  By contrast, numerous reported cases address claims against municipalities or private entities.  This suggests that there will be actually be very few instances in which the United States may have to address this court's sovereign immunity reasoning.  While the United States points to cases in which Fair Housing Act claims have been brought against states or state agencies by parties other than the United States, that does not "demonstrat[e] that state agencies may often be the subject of [Fair Housing Act] claims by the United States."  Document No. 97, Page 12 of 24.  The instances in which this court's Damages Ruling might actually be on point in cases involving the United States appear to this court to be far more limited than the United States posits.

The court notes that even if the United States is barred from seeking damages on behalf of individual victims from a state or territory, that does not necessarily mean that individual victims cannot seek compensation.  Damages may be available under other federal laws or under state laws.  For example, individual victims of housing discrimination could seek damages from state officials in their individual capacities under 42 U.S.C. § 1983.  During the hearing on this motion, the United States said that it wanted to be able to proceed under the Fair Housing Act to avoid defenses like a statute of limitations or estoppel that might be raised in other contexts.  This court

7

understands the value of claims that are not constrained by various defenses applicable to other claims. But the point remains that the Damages Ruling does not necessarily deprive individual victims of any remedy.

Critical to this court's analysis of the United States' vacatur motion is the status of the Damages Ruling as a decision by a single district judge. The decision does not bind anyone in any other case, and others are free to adopt or reject its reasoning. At most, the Damages Ruling might have some persuasive effect, but that is so whether the court vacates the Damages Ruling or not. As the United States concedes in its moving papers, even if this court grants the motion for vacatur, the Damages Ruling itself will remain available, easily findable on Westlaw, Lexis, and other legal data bases. The decision would be flagged as having been vacated, and any vacatur order noting the parties' settlement would be included in the data bases, but the Damages Ruling itself would not be removed from the data bases. Thus, to the extent the United States is concerned about the persuasive value of the Damages Ruling, that value, such as it may be, would remain with or without vacatur.

This court's Damages Ruling addresses the Fair Housing Act claims before it. If another court adopts similar reasoning in another Fair Housing Act case, or even in a case involving an entirely different context, the United States would be free to

8

challenge that court's ruling on appeal. This is so even if, as the United States posits, a municipality tries to analogize its position to that of a state or territory. According to the United States, that would be a misuse of this court's Damages Ruling. Assuming without deciding that that would be a misuse, any misuse provides no basis for vacatur. Any decision could possibly be misapplied, and the United States' argument in that regard is an argument that all court rulings should be vacated upon settlement. That is not the law. In this particular instance, the United States may take comfort in this court's earlier statement that its ruling binds no other district judge.

The United States clearly considers the Damages Ruling to be mistaken. Nevertheless, this court, having given the ruling time and consideration, thinks it should not render that time and consideration a waste. Public policy dictates that the Damages Ruling be available for scrutiny by other parties, courts, and the legal community, even if not reviewed by an appellate court. *See Am. Games*, 142 F.3d at 1170. This court's ruling belongs to the public, not just to the parties in this case. This judge therefore declines to vacate its Damages Ruling.

**IV. CONCLUSION.**

The United States' motion seeking vacatur of this court's Damages Ruling is denied.

9

IT IS SO ORDERED.

DATED: July 17, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States of America v. Government of Guam, et al.*, Civ. No. 17-00113;
ORDER DENYING PLAINTIFF UNITED STATES OF AMERICA'S MOTION TO VACATE ORDERS